UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA H.,[1] | Case No. 2:18-cv-10246-JC |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| ANDREW SAUL,[2] Commissioner of Social Security Administration, | |
| Defendant. | |

## I.    SUMMARY

On December 10, 2018, plaintiff Adriana H. filed a complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

---

[1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Andrew Saul is hereby substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action.

1

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions"). The Court has taken the Motions under submission without oral argument. <u>See</u> Fed. R. Civ. P. 78; L.R. 7-15; December 19, 2018 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 31, 2014, plaintiff protectively filed an application for Supplemental Security Income, alleging disability beginning on March 20, 2008, due to fibromyalgia, major depressive disorder, chronic pain disorder, an inability to concentrate, and numbness in both feet. (Administrative Record ("AR") 31, 193-98, 211). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 50-86).

On November 2, 2017, the ALJ determined that plaintiff was not disabled from July 31, 2014 (the protective filing date), through the date of the decision. (AR 31-43). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: agoraphobia with panic disorder, a depressive disorder (not otherwise specified), a conversion disorder, myalgic and arthralgic symptoms of unclear etiology, and obesity (AR 33); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 35); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations (*i.e.*, she can engage in occasional postural activity except she can frequently climb and balance, she must avoid moderate exposure to odor dust, fumes, dust and gases, and she is limited to performing simple routine tasks) (AR

35-42; (4) plaintiff has no past relevant work (AR 42); and (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically booth cashier (DOT 211.462-010), counter clerk (DOT 249.366-010, with 35,000 jobs nationally), and folding machine operator (DOT 208.685-014, with 50,000 jobs nationally) (AR 42-43).

On October 16, 2018, the Appeals Council denied plaintiff's application for review. (AR 1-5).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – i.e., determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of

3

the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.     Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

4

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.    DISCUSSION

Plaintiff does not challenge the ALJ's summary or assessment of her physical impairments. (Plaintiff's Motion at 5). Plaintiff contends that substantial evidence does not support the ALJ's mental residual functional capacity assessment and step five determination. (Plaintiff's Motion at 12-22). Neither contention merits reversal or remand.

### A.    Substantial Evidence Supports the ALJ's Mental Residual Functional Capacity Assessment

Plaintiff contends that the ALJ's mental residual functional capacity assessment is not supported by substantial evidence because no doctor considered how plaintiff's conversion disorder, in combination with her agoraphobia and depressive disorder, would impact her abilities and limitations. (Plaintiff's Motion at 12-13). As detailed below, the record belies plaintiff's contention – the State agency review physician considered these diagnoses in opining that plaintiff is a capable of simple work. Plaintiff has not shown that a reversal or remand is required on this basis.

5

### 1. Summary of the Relevant Medical Record

Plaintiff presented to the Citrus Valley Medical Center emergency room in September 2014 for sudden onset neck and head pain. (AR 444). CT scans of plaintiff's brain were "negative" and showed no sign of aneurysm. (AR 443-44). Plaintiff also went to the San Dimas Community Hospital emergency room in October 2014 for a headache. (AR 588-91). She had normal neurological findings and a normal CT scan, suggesting that an intracranial bleed was unlikely. (AR 590).

In November 2014, plaintiff was diagnosed with right-sided Bell's Palsy. (AR 257, 467). Plaintiff had presented to the Citrus Valley Medical Center emergency room for headache with pain on the right side of her head and facial palsy on the right side of her face. (AR 465-81). She reportedly also had a history of severe depression with "hysterical reaction." (AR 467). On follow up two days later with Dr. Yafa Minazad, plaintiff reported sudden, worsening left side weakness. (AR 1119). She reportedly had mild left facial droop, left upper extremity weakness and mild left lower extremity weakness. (AR 1120). Dr. Minazad diagnosed cerebral vascular accident ("CVA," *i.e.*, stroke). (AR 1120).

In January 2015, plaintiff presented to the St. Jude Fullerton emergency room for possible stroke, complaining that the left side of her body was paralyzed. (AR 495-505, 508-40). Testing showed no evidence of stroke. (AR 508, 527-36). She was diagnosed with, *inter alia*, "conversion disorder" related to severe stress and major depression, with a note to rule out superimposed stroke, migraine-related stroke, or other neurological syndrome, and referred for therapy. (AR 508, 511). She notably had a history of "these episodes before." (AR 514). According to a handout from the hospital, conversion disorder occurs "when your body responds with physical symptoms to intense emotional stress or trauma," causing symptoms such as not being able to move or feel parts of your body, not being able to stand or walk normally, body movement that feels out of control, loss of

normal speech, sight or hearing, trouble urinating or swallowing, and tremors or seizures. (AR 498). Treatment for conversion disorder is psychotherapy or counseling, with symptoms most often improving without medication. (AR 498).

In December 2016, plaintiff presented to the Citrus Valley Medical Center emergency room complaining of a stroke with left-sided weakness and reportedly was unable to talk. (AR 1123, 1129-79). She reported having suffered a similar episode a year before which had resolved on its own. (AR 1129). After initial testing, she was diagnosed with uncontrolled hypertension, acute focal neurological deficit (on the left side), CVA for which she was administered TPA (tissue plasminogen activator), with a notation, "Possibility exists for conversion reaction." (AR 1135). Plaintiff later was noted to have "nonphysiologic deficit, may be conversion or could be migraine causing this. Await neurology consultation." (AR 1139). She returned to the hospital later in December and was transferred to rehabilitation as status post acute stroke with left-sided weakness. (AR 1174). By the next day, however, she was noted to have improving left-sided hemiparesis, with power 4/5 on the left side and 5/5 on the right side. (AR 1176).

Neurologist Dr. Fares Elghazi evaluated plaintiff in March 2017. (AR 647-48). She reported having recently been admitted to the hospital for sudden onset headache followed by left-sided arm, leg, and face weakness, and was treated for acute ischemic infarct with TPA. (AR 647). Testing was negative. (AR 647). Plaintiff reported a prior similar event in 2015 with headache followed by neurological deficit with "full recovery of her symptoms." (AR 647). Dr. Elghazi reported no abnormal findings on examination – plaintiff had a symmetrical face and normal strength, tone, and bulk. (AR 648). Dr. Elghazi diagnosed "complicated migraine" and prescribed medication. (AR 648).

Meanwhile, psychological consultative examiner Dr. Ahmad R. Riahinejad provided a psychological evaluation dated September 25, 2014 – prior to any of plaintiff's possible conversion reactions. (AR 386-91). Plaintiff reported a history

of molestation, depression, nightmares, and flashbacks. (AR 386). She then was seeing a psychiatrist, attending therapy, and taking Xanax, Clonazepam, and Trazodone. (AR 387). Plaintiff reportedly needed help making meals, shopping, dressing, bathing, doing household chores, and walking. (AR 387). On examination, plaintiff appeared to be making "slightly insufficient effort" and had intellectual functioning in the "deficient" range, tearful affect, depressed mood, "fair" immediate memory, "variable" concentration and attention span, "low" general fund of knowledge, and "fair" judgment. (AR 388). Her full scale IQ score was 70, placing her in the borderline range which reportedly appeared to be accurate. (AR 389). Dr. Riahinejad diagnosed post traumatic stress disorder and borderline intellectual functioning and opined that plaintiff is able to understand, remember, and carry out simple and repetitive instructions with appropriate pace, and could relate and accept supervision. (AR 390). Dr. Rianinejad deferred opinion on plaintiff's medical conditions (*i.e.*, fibromyalgia, chronic pain disorder, and migraines) to proper specialists. (AR 390).

State agency psychologist Dr. Joshua D. Schwartz reviewed the available medical record and opined on initial review in October 2014 that plaintiff would be capable of performing simple tasks. (AR 87-101 (giving "great weight" to Dr. Riahinejad's consultative examiner opinion)).[3]

On reconsideration, plaintiff reported she had been diagnosed with Bell's Palsy in November 2014 and was suffering from, *inter alia*, pain, numbness, limited motor skills, and an inability to talk. (AR 103, 257). The available medical record included her January 2015 conversion disorder diagnosis (AR

---

[3]Psychiatrist consultative examiner Dr. Ernest A. Bagner, III, subsequently reviewed the available medical record (including treating psychiatrist Dr. Kenneth Phun's records) and provided a complete psychiatric evaluation dated April 20, 2015. (AR 554-58). Dr. Bagner diagnosed major depressive disorder, anxiety disorder (not otherwise specified), and panic disorder with agoraphobia, and opined that plaintiff would have at most only mild limitations. (AR 557-58).

109). State agency physician Dr. P.M. Balson noted that he/she was "concerned about this [claimant]." (AR 110). Dr. Balson noted that a new neurological examination showed "multiple small CVAs" versus conversion disorder, and opined that either diagnosis might indicate current evidence of a decline in mental functional capacity (as evidenced by borderline intellectual functioning on testing). (AR 110). Dr. Balson also described Dr. Bagner's later psychiatric consultative examination as from a "possibly questionable source" because Dr. Bagner performed no testing and is "known to evaluate many claimants – and almost always provides similar functional ratings and almost never supports a grant." (AR 110). Dr. Balson proposed options for obtaining more information about plaintiff's mental impairments, including getting treatment records and a medical source statement from plaintiff's treating physician. (AR 110-11).

Plaintiff's treating psychiatrist Dr. Kenneth Phun subsequently provided treatment notes and a "Short-Form Evaluation for Mental Disorders" dated July 20, 2015, noting that he had treated plaintiff monthly since November 2014, opining that plaintiff has panic disorder with agoraphobia and depressive disorder (not otherwise specified), and would be "unlimited" in her ability to understand, remember, and carry out simple instructions, would have a "good" ability to interact appropriately with the public, and in all other areas of functioning would have "fair" abilities (*i.e.*, the evidence supports the conclusion that plaintiff's capacity is impaired, but the degree of impairment "needs to be further described" with no such description). (AR 111; see also AR 488-92, 599-603 (Dr. Phun's treatment records), 604-08 (Dr. Phun's form opinion)). As summarized by Dr. Balson on review, Dr. Phun's records showed that plaintiff: (1) was able to "manifest" "full mental functional [activities of daily living]"; (2) had "episodically mildly [symptoms]"; and (3) "demonstrated mood stability and gradual control over anxiety [disorder] signs/[symptoms]"; and that (4) there was overall "no evidence with the [treatment] data that [claimant] is not predictably

capable of attaining/sustaining full time basic skill level open marketplace work – if motivated to do so and if continues [treatment]/[medications] as prescribed." (AR 111, 488-92, 599-603; see also AR 657-61 (Dr. Phun's records post-dating Dr. Balson's review)).

Dr. Balson concluded in August 2015, based on the treatment records provided, that plaintiff is capable of performing simple tasks. (AR 111-12, 116-17). Dr. Balson noted that plaintiff had no history of special education and had completed high school. (AR 117).

## 2. Analysis

Contrary to plaintiff's contention, Dr. Balson considered plaintiff's agoraphobia, depressive disorder, and conversion disorder (and Dr. Phun's treating opinion evidence also finding plaintiff capable of performing simple tasks (AR 607)) in reaching the conclusion that plaintiff is capable of the mental residual functional capacity the ALJ found to exist. Where, as here, the opinion of a non-examining physician does not contradict "all other evidence in the record," the Administration properly may rely upon such opinion. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Curry v. Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1990). The Administration may not rely solely upon the opinions of non-examining experts. See, e.g., Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995); Erickson v. Shalala, 9 F.3d 813, 818 n.7 (9th Cir. 1993). Here, the ALJ did not do so. The ALJ considered the consultative examiner opinions and Dr. Phun's opinion and concluded that there was "little herein to indicate that the state agency evaluating mental health consultants' assessments are misplaced, and/or that greater mental limitations than those identified [herein] are warranted, particularly when [plaintiff is] medically compliant." (AR 39-41 (discussing opinion evidence)).[4]

_____

[4]The ALJ also noted that she had considered the "handful of conversion episodes" in reaching her decision and explained: "While it is likely that [plaintiff] would have been unable

(continued...)

For the foregoing reasons, a remand or reversal on this basis of the ALJ's mental residual functional capacity assessment is not warranted.

**B.     The ALJ's Step Five Determination Is Free of Material Error**

Plaintiff contends that the ALJ erred at step five in determining that plaintiff could perform the representative occupations of cashier and counter clerk because the requirements for those jobs allegedly are inconsistent with plaintiff's abilities. (Plaintiff's Motion at 14-16). Specifically, plaintiff argues that she would be unable to perform the cashier job because it requires Reasoning Level Three skills, and unable to perform the counter clerk job because of its "myriad of duties," which are beyond her residual functional capacity limiting her to "simple routine tasks." (Plaintiff's Motion at 14-16). Plaintiff also argues that the vocational expert's estimation on the number of jobs available for the counter clerk and folding machine operator positions is not supported. (Plaintiff's Motion at 17-22). For the reasons explained below, a remand or reversal based on the ALJ's step five determination is not warranted.[5]

**1.     Pertinent Law**

At step five, the Commissioner must prove that other work exists in "significant numbers" in the national economy which could be done by an individual with the same residual functional capacity ("RFC"), age, education, and

---

[4](...continued)
to sustain even simple repetitive tasks during these episodes, there is no evidence that the resultant stroke like symptoms ever persisted for more than a brief period, and/or that there was ever any lingering effects thereof either physically or mentally. Nor is there evidence that they occurred with sufficient frequency to be work preclusive." (AR 40).

[5]Plaintiff filed a request for judicial notice asking that the Court take notice of the Dictionary of Occupational Titles listings and the Selected Characteristics of Occupations for the jobs the vocational expert identified. (Docket No. 19). The request is moot and is denied as such. The Court has considered the information contained in the Dictionary of Occupational Titles for the jobs the vocational expert identified in reaching the conclusion herein that the ALJ's step five determination is free of material error.

work experience as the claimant.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R.

§§ 404.1520(a)(4)(v) & (g), 404.1560(c), 416.920(a)(4)(v) & (g), 416.960(c);

Heckler v. Campbell, 461 U.S. 458, 461-62 (1983); see Zavalin v. Colvin, 778

F.3d 842, 845 (9th Cir. 2015) (describing legal framework for step five) (citations

omitted).

One way the Commissioner may satisfy this burden is by obtaining

testimony from an impartial vocational expert (alternatively, "VE") about the type

of work such a claimant is still able to perform, as well as the availability of

related jobs in the national economy.  See Gutierrez v. Colvin, 844 F.3d 804, 806-

07 (9th Cir. 2016) (citation omitted); Osenbrock v. Apfel, 240 F.3d 1157, 1162

(9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).  When a vocational expert is

consulted at step five, the ALJ typically asks the VE at the hearing to identify

specific examples of occupations that could be performed by a hypothetical

individual with the same characteristics as the claimant.  Zavalin, 778 F.3d at 846

(citations omitted); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (citations

omitted).  The VE's responsive testimony may constitute substantial evidence of a

claimant's ability to perform such sample occupations so long as the ALJ's

hypothetical question included all of the claimant's limitations supported by the

record.  See Hill, 698 F.3d at 1161-62 (citations omitted); Robbins v. Social

Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted).

A VE's testimony generally should be consistent with the Dictionary of

Occupational Titles ("DOT").[6]  See Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th

_____

[6]The DOT, which is compiled by the U.S. Department of Labor, "details the specific
requirements for different occupations," and is the Social Security Administration's "'primary
source of reliable job information' regarding jobs that exist in the national economy."  Gutierrez,
844 F.3d at 807; Zavalin, 778 F.3d at 845-46 (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th
Cir. 1990)); see also 20 C.F.R. §§ 404.1566(d)(1), 404.1569, 416.966, 416.969.  Neither the
DOT nor a VE's opinion, however, "automatically 'trumps'" where there is a conflict.  Massachi
(continued...)

Cir. 2017) ("Presumably, the opinion of the VE would comport with the DOT's guidance."); see generally Gutierrez, 844 F.3d at 807 (DOT "guides the [ALJ's] analysis" at step five). To the extent it is not – *i.e.*, the VE's opinion "conflicts with, or seems to conflict with" the DOT – an ALJ may not rely on the VE's testimony to deny benefits at step five unless and until the ALJ has adequately resolved any such conflict. Gutierrez, 844 F.3d at 807 (citing Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *2 (2000)); Rounds, 807 F.3d at 1003-04 (citations omitted); SSR 00-4p, 2000 WL 1898704, at *4 ("When vocational evidence provided by a VE [ ] is not consistent with information in the DOT, the [ALJ] must resolve [the] conflict before relying on the VE [ ] evidence to support a determination or decision that the individual is or is not disabled."). In each case where VE testimony is used, an ALJ generally must affirmatively (1) ask the VE whether there is a conflict between the expert's opinions and the DOT requirements for a particular occupation; (2) "obtain a reasonable explanation for any apparent conflict"; and (3) explain in the decision how the ALJ resolved any such conflict. Massachi, 486 F.3d at 1152-53 (quoting SSR 00-4p).

    An ALJ need only resolve those conflicts that are "apparent or obvious." Gutierrez, 844 F.3d at 807-08. A conflict is "apparent or obvious" only when VE testimony is "at odds with" DOT requirements that are "essential, integral, or expected" for a particular occupation. Id. at 808. The extent to which an ALJ must scrutinize a VE's opinions is highly "fact-dependent." Lamear, 865 F.3d at 1205 (citation omitted). For example, "less scrutiny" is required where the VE has identified a representative occupation that is "familiar" (*e.g.*, "cashiering"). Gutierrez, 844 F.3d at 808. In such cases, an ALJ may be able to resolve a

---

[6](...continued)
v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Social Security Ruling 00-4p) (internal quotation marks omitted).

potential conflict without inquiring further of the VE – *i.e.*, based on "common experience" that it is "likely and foreseeable" that a claimant with certain limitations would still be able to perform all of the "essential, integral, [and] expected" requirements the DOT described for the particular occupation. See, e.g., id., at 807-08 (*e.g.*, no "apparent or obvious conflict" between DOT listing for "cashier" occupation which requires "frequent reaching" and VE's testimony that claimant could still work as a cashier despite her inability to reach above shoulder level with her right arm, given how "uncommon it is for most cashiers to have to reach overhead" at all).

Conversely, where a representative occupation is "more obscure," ordinarily an ALJ would not be able to resolve an apparent conflict at step five based solely on "common experience," but instead would need to ask the VE to provide a more detailed explanation for the apparently conflicting opinion. Lamear, 865 F.3d at 1205 (footnote omitted).

## 2.    Additional Pertinent Facts

The vocational expert in this case testified that a hypothetical person with plaintiff's residual functional capacity, including a limitation to simple routine tasks, could perform the DOT jobs of booth cashier (DOT 211.462-010), counter clerk (DOT 249.366-010, with 35,000 national positions), and folding machine operator, clerical (DOT 208.685-014, with 50,000 national positions).   (AR 82-84).  The expert testified that her testimony was consistent with the DOT.  (AR 85).  Relying on the vocational expert's testimony, the ALJ determined that plaintiff could perform these alternative jobs and therefore was not disabled.  (AR 42-43).

Plaintiff's prior counsel who represented plaintiff at the administrative hearing had no questions for the vocational expert and did not challenge the expert's testimony.  (AR 85).  Plaintiff's current counsel, who began representing plaintiff in November 2017, shortly after the ALJ's adverse decision (AR 26, 190),

14

raised plaintiff's issues with the vocational expert's testimony via letter brief dated
March 19, 2018, with exhibits including data from the Job Browser Pro software
program and the Bureau of Labor Statistics for the representative jobs the
vocational expert identified at the hearing. (AR 310-28). The Appeals Council
considered counsel's argument and found no reason to review the ALJ's adverse
decision. (AR 1).

### 3. Analysis

#### a. Cashier II

Plaintiff argues that pursuant to <u>Zavalin</u>, a limitation to "simple routine
tasks" is inconsistent with Reasoning Level Three work, and thus, she would be
unable to perform the cashier job, which requires Level Three reasoning.
(Plaintiff's Motion at 14-15). Plaintiff also generally argues that the DOT
description for Cashier II (which provides for "frequent" (*i.e.*, from 1/3 to 2/3 of
the time) talking/hearing, a "medium degree of aptitude ability" in certain
functions, and "dealing with people") and the DOT narrative for this job "belie[]
the proposition that cashiers perform simple routine duties." <u>Id.</u>; <u>see also</u> DOT
211.462-010, 1991 WL 671840 (Cashier II listing).

There are six GED Reasoning Levels that range from Level One (simplest)
to Level Six (most complex). DOT (4th ed. 1991), app. C., § III, 1991 WL
688702. Level Three requires a worker to "[a]pply commonsense understanding
to carry out instructions furnished in written, oral, or diagrammatic form" and to
"[d]eal with problems involving several concrete variables in or from standardized
situations." <u>Id.</u> "Courts have found that a limitation to simple tasks performed at
a routine or repetitive pace may be consistent with Reasoning Level 2." <u>Skinner v.
Berryhill</u>, 2018 WL 1631275, at *4 (C.D. Cal. Apr. 2, 2018) (citation and internal
quotation marks omitted). "However, '[a]s one goes up the numerical reasoning
development scale used by the DOT, the level of detail involved in performing the
job increases while the job task becomes less routine.'" <u>Id.</u> (quoting <u>Meissl v.</u>

15

Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. May 25, 2005)). Therefore, "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." Zavalin, 778 F.3d at 846-47 (holding that an ALJ must recognize and resolve such conflict during administrative proceedings); see also Shaibi v. Berryhill, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017) (noting same).

Notwithstanding the VE's testimony that no conflict existed, an apparent conflict exists between the ALJ's finding that plaintiff is limited to simple routine tasks and the VE's testimony that a person with plaintiff's RFC could perform the Cashier II job requiring Level Three reasoning, and the ALJ erred in failing to resolve the apparent conflict through VE testimony. See Zavalin, 778 F.3d at 846-47; see also Lamear, 865 F.3d at 1207 n.3 ("The ALJ is not absolved of this duty to reconcile conflicts merely because the vocational expert responds yes when asked if her testimony is consistent with the DOT.") (citation and internal quotation marks and brackets omitted).

Defendant argues that any error was harmless in relation to the specific demands of the cashier job in light of plaintiff's background/abilities. (Defendant's Motion at 6-9). Plaintiff is silent on the issue of harmless error. (Plaintiff's Motion at 14-15). Because the ALJ determined plaintiff could perform other jobs identified by the vocational expert, as discussed below, the Court finds the ALJ's above-referenced error to be harmless. See Meanel v. Apfel, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (indicating that the court need not address a claimant's arguments regarding one of two jobs identified by the ALJ given that one of the jobs satisfied step five); see also Shaibi v. Berryhill, 883 F.3d at 1110 n.7 (finding Zavalin error harmless where VE identified other jobs the claimant could perform) (citation omitted).

///
///

Plaintiff contends that the ALJ failed to resolve an apparent conflict between her RFC limiting her to simple routine work and the DOT narrative for the counter clerk job, which provides:

> Receives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment: Answers customer's questions regarding prices and services. Receives film to be processed from customer and enters identification data and printing instructions on service log and customer order envelope. Loads film into equipment that automatically processes film, and routes processed film for subsequent photo printing. Files processed film and photographic prints according to customer's name. Locates processed film and prints for customer. Totals charges, using cash register, collects payment, and returns prints and processed film to customer. Sells photo supplies, such as film, batteries, and flashcubes.

See Plaintiff's Motion at 16 (quoting DOT 249.366-010, 1991 WL 672323 (Counter Clerk listing)).  Plaintiff argues that the "myriad of duties" described above, including the need to respond to customers, use processing equipment, and engage in financial transactions, is in apparent conflict with the limitation to simple routine work.  (Plaintiff's Motion at 16).

Any conflict that may exist between the counter clerk job and plaintiff's limitation to simple routine work is not readily apparent as plaintiff suggests, but rather is speculative, unsupported by citation to any authority, and belied by the DOT job description.  The counter clerk job is a Reasoning Level Two job which, as noted above, has been found to be consistent with simple routine work.  Skinner v. Berryhill, 2018 WL 1631275, at *4.  According to the DOT, the counter clerk

job involves the lowest degree of aptitude ability (*i.e.*, the lowest 1/3 excluding the bottom 10 percent of the population) in all functions except clerical perception, with a Specific Vocational Preparation Level Two, which applies to anything beyond a short demonstration up to and including one month. (DOT 249.366-010, 1991 WL 672323). Based on the record before it, the Court finds that the vocational expert's testimony did not present an actual or apparent conflict with the DOT, and the ALJ properly relied on the vocational expert's testimony in determining that plaintiff could perform the counter clerk job. See Garcia v. Colvin, 2015 WL 5568606, at *9 (C.D. Cal. Sept. 22, 2015) (rejecting claim that counter clerk job conflicted with limitation to simple routine and repetitive tasks given that job has Reasoning Level Two); Jones v. Astrue, 2008 WL 5351631, at *3 (C.D. Cal. Dec. 18, 2008) (same).

### c. Counter Clerk and Folding Machine Operator

Plaintiff argues that the VE's estimation of the number of jobs available for counter clerks and folding machine operators is contradicted by Job Browser Pro and Bureau of Labor Statistics data, and offers her lay interpretation of these sources to support her argument. (Plaintiff's Motion at 17-22). The VE testified that there were 35,000 counter clerk jobs available nationally, and 50,000 folding machine operator jobs available nationally. (AR 83). If the ALJ properly relied on this testimony, the number of jobs the VE identified is sufficient to exist in "significant numbers." See Gutierrez v. Colvin, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number).[7]

---

[7]Plaintiff does not dispute the accuracy of the hypothetical question the ALJ posed to the vocational expert at the administrative hearing. Thus, the vocational expert's testimony in response to the ALJ's complete hypothetical question, without more, was substantial evidence supporting the ALJ's determination that plaintiff was able to perform work which exists in significant numbers in the national economy. See Tackett, 180 F.3d at 1101; see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise

(continued...)

Contrary to plaintiff's argument, Job Browser Pro and Bureau of Labor Statistics data do not undermine the reliability of the vocational expert's testimony which the ALJ adopted at step five.

Plaintiff's counsel did not question the vocational expert regarding the evidentiary basis for her estimated job numbers, or inquire whether the VE's numbers were consistent with any sources on which the VE may have relied. (AR 85). Plaintiff has not provided evidence from a vocational or similar expert explaining or analyzing the new vocational evidence plaintiff presented to the Appeals Council. Plaintiff's cryptic and confusing lay interpretation of the raw vocational data does not suffice. See, e.g., Cardone v. Colvin, 2014 WL 1516537, *5 (C.D. Cal. Apr. 18, 2014) (plaintiff's lay assessment of raw vocational data "unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context" insufficient to undermine the reliability of the VE's opinion regarding number of representative jobs in national economy which ALJ adopted at step five).[8]

Finally, even if the evidence as a whole (including the Job Browser Pro and Bureau of Labor Statistics data) could also support a finding of "disabled" at step five, this fact does not warrant reversing the ALJ's contrary finding which is itself supported by substantial evidence. See Molina, 674 F.3d at 1111 (citation omitted); cf., e.g., Gardner v. Colvin, 2013 WL 781984, *2 (C.D. Cal. Mar. 1,

---

[7](...continued)
provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").

[8]Plaintiff asserts that Job Browser Pro is "commonly accepted [in] the vocational expert industry. . . [i]t is not necessary to understand how the program works, why it works, or the math behind the program." (Plaintiff's Motion at 19 (citation omitted)). Plaintiff has cited no authority which stands for the proposition that raw data from the Job Browser Pro program submitted by plaintiff's counsel for the first time to the Appeals Council provides sufficient grounds to reverse an ALJ's assertedly contrary step five determination which is itself supported by substantial evidence.

2013) (observing "Ninth Circuit has held that where the ALJ relies on proper evidence in concluding that there are jobs in the national economy that a claimant can perform, the Appeals Council is free to reject contradictory [expert vocational] evidence obtained after an adverse administrative decision") (citing Gomez v. Chater, 74 F.3d 967, 972 (9th Cir.), cert. denied, 519 U.S. 881 (1996), superseded by regulation on other grounds as noted in Ashmore v. Colvin, 2013 WL 837643, *3 n.2 (D.S.C. Mar. 6, 2013)).

For the foregoing reasons, the Court does not find persuasive plaintiff's argument that the VE's job numbers were unreliable, which is based on nothing more than lay interpretation of raw vocational data presented for the first time to the Appeals Council. Similar arguments have been soundly rejected by multiple courts. See Cardone, 2014 WL 1516537 at *5 ("[P]laintiff's lay assessment[] of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the VE's opinion, which the ALJ adopted at step five."); Merryflorian v. Astrue, 2013 WL 4783069,*5 (S.D. Cal. Sept. 6, 2013) (same; noting similar argument "has been recently and uniformly rejected by numerous courts" and that "vast majority of [such] cases" . . . involv[ed] plaintiff's counsel or his law firm") (citing cases); Solano v. Colvin, 2013 WL 3776333, *1 (C.D. Cal. July 16, 2013) (rejecting argument that evidence from Job Browser Pro plaintiff submitted to Appeals Council undermined testimony of vocational expert regarding number of available jobs, in part, where no expert had found plaintiff's job evidence reliable); Hunt v. Colvin, 2013 WL 1969401, *3 (C.D. Cal. May 13, 2013) (Job Browser Pro data that differs from VE's testimony "not enough to warrant remand" where plaintiff "[did not] support her interpretation of the raw numbers included in the Job Browser Pro data with any analysis or explanation from a VE") (citing Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)); Gardner v. Colvin, 2013 WL 781984, at *3 (C.D. Cal. Mar. 1, 2013) (rejecting "argument that the

VE's testimony does not constitute substantial evidence in light of conflicting evidence from . . . Job Browser Pro"); <u>Bradley v. Astrue</u>, 2012 WL 5902349, *7 (C.D. Cal. Nov. 26, 2012) (upholding administrative decision notwithstanding conflict between vocational expert's testimony and additional vocational evidence plaintiff submitted to the Appeals Council which plaintiff had argued "starkly conflict[ed] with the vocational expert's testimony regarding the numbers of relevant jobs existing in the economy"). A remand or reversal based on the ALJ's step five determination is not warranted.

## V.     CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  October 31, 2019

_____
                /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE